STATE OF OHIO
FRANKLIN COURT OF COMMON PLEAS
COLUMBUS, OHIO

CIVIL ACTION NO.

BRANDON CHARLES HELMAN,
C/O 122 W WYANDOT AVE., P.O. BOX 22
UPPER SANDUSKY, OH, 43351

*Plaintiff*,

v.

JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION,
1111 POLARIS PKWY COLUMBUS, OH, 43240-2050

*Defendant*.

Service: Mail Code LA4-7100
700 Kansas Lane
Monroe, LA 71203

## PLAINTIFF'S COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW, person BRANDON CHARLES HELMAN, presented by man Brandon C. Helman, and files this *Complaint* against Defendant JPMORGAN CHASE BANK, NATIONAL ASSOCIATION ("CHASE"), and alleges, upon information and belief, the following: (Please note that spelling of each name is important and will always be as above throughout this complaint for clarity in the court.)

### I. INTRODUCTION

1. Brandon C. Helman would like to mention that he has studied for an absolutely unbelievable number of hours in an attempt to be a very kind, knowledgeable, smooth and learned man. Brandon C. Helman is not belligerent and arrives with his hat in his hand in an effort to learn, grow, and achieve the best possible result for all parties. Brandon C. Helman recognizes and has had a tremendous amount of experience with

the typical "pro se litigant" and he understands the frustrations and exhaustions of the court. Brandon C. Helman asks, with full transparency, to please not label him in the same category as what has been seen before by the court.

2. Brandon C. Helman is very excited about the procedure of law and has a great veneration towards the work of the court as well as the amazing effort of everyone who has contributed to our incredible system.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action and all counts under ORC Section 2305.01.

4. Venue in this district is proper under 28 U.S. Code § 93 because the events giving rise to this claim originated in this district.

5. Joinder in this district is proper as to the Defendant under Ohio Civil Rule 19 as (1) the claims against the Defendant arise out of the same transaction, occurrence, or series of transactions or occurrences, and (2) there is a question of law or facts common to the Defendant.

6. Through the power of naturalization, found in 8 USC 1101(a)(23), Brandon C. Helman confers the nationality of the State called "STATE OF OHIO" on BRANDON CHARLES HELMAN, after birth, by any means whatsoever. This satisfies the jurisdictional requirements of the court.

## III. PARTIES

7. Brandon C. Helman is a resident of Wyandot County, Ohio, and is the agent for the principal account holder BRANDON CHARLES HELMAN. By Power of Attorney, Brandon C. Helman is the authorized representative to speak on behalf of the principal BRANDON CHARLES HELMAN or BRANDON C HELMAN.

8. BRANDON CHARLES HELMAN/BRANDON C HELMAN is now naturalized to the State called "STATE OF OHIO" for the purpose of addressing grievances within this

court's jurisdiction. Both names of the represented party are capitalized in English and the name "BRANDON HELMAN" in capital letters can also be used to identify this entity by the same Social Security Account Taxpayer Identification (TIN) number ███████.

9. Defendant JPMORGAN CHASE BANK, NATIONAL ASSOCIATION is an Ohio Foreign For-Profit Corporation with its principal place of business located at 1111 Polaris Pkwy Columbus, OH, 43240-2050 and which conducts business in the State of Ohio. CHASE may be served with process at Mail Code LA4-7100, 700 Kansas Lane, Monroe, LA, 71203.

### IV. GENERAL FACTUAL ALLEGATIONS

10. BRANDON C HELMAN had CHASE credit account #XXXXXX5397.

11. *Ens legis* name "BRANDON C HELMAN" and "BRANDON CHARLES HELMAN" are both referring to the same person, "BRANDON HELMAN" is also included.

12. Brandon C. Helman is the representative for BRANDON CHARLES HELMAN.

13. Brandon C. Helman gave permission to CHASE to access and use the credit of BRANDON CHARLES HELMAN.

14. Improper performance was made on these accounts by extraneous and unnecessary Federal Reserve Notes being used to pay the accounts.

15. Proper performance would have been to indorse the original collateral securities under qualified/special negotiation, prior to them being exchanged for Federal Reserve Notes.

16. Brandon C. Helman failed to do a qualified/special indorsement on the original collateral securities.

17. Had Brandon C. Helman known, Brandon C. Helman would have done qualified/special indorsements on these collateral securities all the way from the beginning.

18. Brandon C. Helman never intended to do ANY blank indorsements on behalf of BRANDON CHARLES HELMAN.

19. Proper performance is done primarily through clear orders and qualified/special indorsements.

20. Improper performance is done via blank indorsements and lack of orders.

21. Proper performance balances the accounting.

22. Improper performance unbalances the accounting.

23. There were many promissory notes made on these accounts.

24. Each individual credit transaction produced an unconditional promise to pay.

25. A promissory note is an unconditional promise to pay.

26. The promissory notes are negotiable instruments.

27. "Promissory note" and "note" mean the same thing.

28. Federal Reserve Notes are promissory notes.

29. Federal Reserve Notes are negotiable instruments.

30. All promissory notes are collateral securities in accordance with 12 U.S.C. § 412.

31. Each month there was a billing statement generated on the above accounts.

32. A "billing statement" is an unconditional order to pay.

33. A "billing statement" or "bill" or any similar language, is another term to describe a "bill of exchange".

34. An unconditional order to pay is a bill of exchange.

35. A bill of exchange is a negotiable instrument.

36. Bills of exchange are collateral securities in accordance with 12 U.S.C. § 412.

37. The definition of "payment" is: "The fulfillment of a promise, or the performance of an agreement".

38. One definition for "tender" is: "The offer of performance, not performance itself, and,

when unjustifiably refused, places other party in default and permits party making tender to exercise remedies for breach of contract.".

39. The above definition is in accord with UCC 3-603(b).

40. All promissory notes produced by BRANDON CHARLES HELMAN are under the purview of 18 U.S.C. § 8.

41. All bills of exchange sent to BRANDON CHARLES HELMAN are under the purview of 18 U.S.C. § 8.

42. BRANDON CHARLES HELMAN is able to legally create currency because it is a Federal Reserve member bank.

43. The Federal Reserve Bank is the custodian to pay on behalf of obligations or other securities of the United States (18 U.S.C. § 8).

44. A conditional acceptance was delivered to an individual at the address for CHASE CARD SERVICES, PO Box 15298-19850 at 12:47 pm on February 3, 2025 in Wilmington, Delaware 19850.

45. This conditional acceptance was received by an agent for JP MORGAN CHASE & CO.

46. Agent Brahima Tracro for CHASE accepted the parcel by hand and stamped with black ink.

47. The parcel is identified as USPS Certified Mail Number: 7022 3330 0000 6521 3919.

48. In this first parcel, Brandon C. Helman was claiming "titles, rights, interest and equity owed to BRANDON C HELMAN".

49. This first parcel included a Power of Attorney ("POA"), outlining the relationship between Brandon C. Helman and BRANDON CHARLES HELMAN.

50. On March 17th, 2025, a parcel was delivered to an individual at 2:34 pm for Cardmember Services, P.O. Box 15135 in Wilmington, DE 19850-5135.

51. The parcel is identified as USPS Certified Mail Number: 7022 3330 0000 6521 4640.

52. Agent Brahima Tracro of CHASE received the second parcel by hand and stamped

with black ink.

53. This parcel had very similar wording to the first parcel.

54. This parcel #2 is an affidavit titled "Affidavit: Novation, Orders, Clarification and Statement of Value and Consideration".

55. This parcel #2 had very clear wording and instructions to CHASE.

56. CHASE has been given official notice, through the affidavit contained in parcel #2, that litigation would commence for failure to address grievances, breaches of fiduciary duties, and the responsibilities pertaining to the application of payment, performances, and obligations.

57. CHASE received these two parcels again along with copies of indorsed drafts, for a total of thirty-nine pages sent, on March 17th, 2025 at 2:35pm by way of FAX to phone number 1-888-643-9628.

58. All mailings of indorsed negotiable instruments, by standard regular means through the USPS mail service, and by way of these Certified Mail parcels through the USPS, ordered the responsible parties to apply the positive value of the negotiable instruments on the account to set-off the account and bring it to zero.

59. In essence, what Brandon C. Helman has been trying to do all this time is simply replace all previous, present, and future blank indorsements with special indorsements. He had to figure all this out all on his own because he was ignored despite many attempts to get into communication.

60. Fraud on this account is due to a complete lack of disclosure of the terms of the account as well as the collateralization of the original promissory note.

61. The orders inside parcel #2 constitute unconditional tender of payment.

62. The term "US dollars" includes Federal Reserve Notes.

63. Due to the original promissory having already been swapped for Federal Reserve Notes

after the application was indorsed with a blank indorsement, the orders inside the parcels were a payment for US dollars.

64. The orders sent by Brandon C. Helman are an unconditional order to pay on this account.

65. Inside parcel #1 this POA contained a special indorsement for all past, present, and future negotiable instruments of:

**WITHOUT RECOURSE**
Pay to the order of:
BRANDON C HELMAN
By: /s/ Brandon C. Helman, agent

Brandon C. Helman, attorney-in-fact

66. BRANDON CHARLES HELMAN is now the person entitled to enforce all negotiable instruments on all the above accounts.

67. BRANDON CHARLES HELMAN is now the holder in due course regarding all negotiable instruments on all the above accounts.

### V. COUNT ONE - BREACH OF CONTRACT:

68. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

69. Had someone spoken to Brandon C. Helman about his options, he would have done a qualified/special indorsement on any instruments to properly perform.

70. CHASE made several attempts to contact Brandon C. Helman by way of letters and phone calls (in excess) to the point of it becoming harassment and unwanted contact.

71. Brandon C. Helman made many attempts to work with CHASE to remedy this situation and provide evidence of tendered payments to no avail.

72. CHASE ignored orders and questions from Brandon C. Helman and closed the account.

### VI. COUNT TWO – BREACH OF FIDUCIARY DUTIES:

73. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

74. CHASE is not a "lender" after rescission of the blank indorsement was completed and the qualified/special indorsement replaced it. Any statements that a "lender" does not have a fiduciary responsibility are irrelevant.

75. BRANDON CHARLES HELMAN is the beneficiary of CHASE.

76. CHASE has a fiduciary duty to the financial success of BRANDON CHARLES HELMAN.

77. CHASE is paid to ensure the law is correctly applied in respect to beneficiary BRANDON CHARLES HELMAN.

78. CHASE has an obligation and desire to ensure that UCC Article 3 is properly followed.

79. CHASE has an obligation and desire to ensure that the Emergency Banking Act of 1933 is followed.

80. Once presented with orders or conditional acceptances above, CHASE never attempted to clarify or perform for Brandon C. Helman or BRANDON CHARLES HELMAN.

81. CHASE follows 12 U.S.C. § 412.

82. "JPMORGAN CHASE BANK, NATIONAL ASSOCIATION" has had access to Federal Reserve Window services since 01/04/1994, according to the Federal Reserve Master Account and Services Database.

83. CHASE acknowledges that it would be in the best interest of their beneficiaries to do qualified/special indorsements on negotiable instruments.

84. CHASE acknowledges that, if clients knew how to do a qualified/special

indorsement, a vast majority would do it.

85. CHASE never mentioned to either Brandon C. Helman or BRANDON CHARLES HELMAN about the benefits of qualified/special indorsements.

86. This harmed BRANDON CHARLES HELMAN by now having an imbalanced account and having to work to acquire extraneous and entirely irrelevant Federal Reserve Notes.

87. This breach of fiduciary duty has caused years of anxiety over the unnecessary use of extraneous Federal Reserve Notes.

## VII. COUNT THREE – MONEY HAD AND RECEIVED:

88. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

89. Plaintiff became the person entitled to enforce these instruments once negotiation was rescinded and clarified.

90. Plaintiff became the holder in due course of these instruments once negotiation was rescinded and clarified.

91. Illegal possession and transfer of above negotiable instruments are retained currently with defendant CHASE.

92. These funds should have been payable to the plaintiff's account to set off the account and a small currency exchange fee should have been charged in order to assist the plaintiff in Federal Reserve Discount Window services.

## VIII. COUNT FOUR – FRAUD:

93. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

94. Unknown negotiation via a blank indorsement allowed CHASE to take possession of all

collateral securities on these accounts fraudulently.

95. This transportation should have been done under qualified/special negotiation and should have been temporary until the application for notes via 12 U.S.C. § 412 was completed at the Federal Reserve Window.

96. Each individual credit transaction on these accounts would be a separate charge of this charge.

97. Plaintiff was never informed as to these instruments being negotiable.

98. Plaintiff was never informed of various optional indorsements in accordance with UCC Article 3.

99. Plaintiff has a responsibility to avail himself of his optional indorsements, but CHASE could have spent a very short period of time to educate plaintiff about indorsements as a part of their fiduciary duties.

100. Brandon C. Helman has clarified and ordered all current and future negotiation while rescinding all previous blank negotiation under fraud.

101. Fraud is due to complete failure to disclose the terms and options of signing/indorsing above collateral securities.

102. This damaged plaintiff materially due to valuable instruments being purloined and not available for plaintiff. Plaintiff was coerced into paying twice on all transactions.

103. Due to Brandon C. Helman's signature being the birth of value for all the above negotiable instruments, Brandon C. Helman and BRANDON CHARLES HELMAN are the secured parties for all transactions in this deal.

104. Each individual credit transaction on these accounts would be a separate instance of this charge.

    IX.    **COUNT FIVE – 42 U.S.C. § 1994 (PEONAGE):**

105. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

though fully stated herein with the same force and effect as if the same were set forth at length herein.

106. Plaintiff was forced to work and perform under this contract as "debt," when the debt only exists due to a failure to use a qualified/special indorsement on the original note.

107. Plaintiff had to use extraneous and irrelevant Federal Reserve Notes to prevent the *ens legis'* credit score (BRANDON CHARLES HELMAN) from being negatively affected.

108. CHASE made it appear that Plaintiff was in debt by failing to help the plaintiff do a qualified/special indorsement.

109. Defendant took possession of all of the manufactured and released collateral securities on the account, then, was given additional Federal Reserve Notes, effectively being paid twice when it should have only been once.

### X. COUNT SIX – UNLAWFUL CONVERSION:

110. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

111. Due to a failure to do a qualified/special indorsement (which could have easily been done), plaintiff was enticed into having to pay each month using irrelevant and extraneous negotiable instruments called Federal Reserve Notes.

112. Brandon C. Helman was intimidated with fear of having BRANDON CHARLES HELMAN credit score attacked if he failed to supply irrelevant and extraneous Federal Reserve Notes each month.

113. Plaintiff received absolutely no equal or adequate consideration in exchange for his collateral securities and negotiable instruments beyond the facilitation of security swaps and transfers (Of which he would be more than happy to pay a fee for).

114. CHASE could have informed plaintiff of his option to do a qualified/special indorsement rather than a blank indorsement.

115. Due to ease of which CHASE could have helped and informed the plaintiff of a qualified/special versus blank indorsement, it is assumed that the intent was to entice the plaintiff into slavery.

116. Brandon C. Helman was forced to serve in a slavery position due to complete fraud regarding the indorsement of the negotiable instruments produced on these accounts.

## XI. COUNT SEVEN – UNJUST ENRICHMENT:

117. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

118. Due to the financial gain of having the plaintiff do a blank indorsement rather than a qualified/special indorsement on the original collateral security, CHASE had financial motive to ensure plaintiff indorsed with a blank indorsement.

119. Intent to have plaintiff sign with a blank indorsement was pre-conceived by CHASE.

120. Plaintiff was left in a situation where he felt compelled to provide entirely irrelevant Federal Reserve Notes in order to prevent the credit score from being attacked.

121. Plaintiff was forced to provide entirely irrelevant Federal Reserve Notes after his collateral securities were purloined via a blank indorsement.

122. CHASE should have been providing a service of swapping the collateral securities under qualified/special negotiation.

123. Brandon C. Helman would have been more than happy to pay a small swap fee for the service of exchanging the collateral securities at the Federal Reserve Window.

124. Instead, the plaintiff was forced to perform each month unnecessarily under threat of

punishment (bad credit reporting).

125. CHASE benefits from a blank indorsement by being able to keep all the Federal Reserve Notes after the application for notes is complete (12 U.S.C. § 412).

126. CHASE benefits from a blank indorsement by being able to collect the Federal Reserve Notes of the swapped collateral securities as well as the Federal Reserve Notes paid each month on the account.

127. CHASE pretends it is the "lender" by claiming the collateral security, after it is released with a blank indorsement, then claiming it using a qualified/special indorsement.

128. Under qualified/special negotiation, BRANDON CHARLES HELMAN is actually the lender and Brandon C. Helman is the borrower. CHASE is just a currency exchange at this point and facilitates Federal Reserve services.

129. CHASE collects substantially more Federal Reserve Notes by carefully failing to inform their beneficiaries of their indorsement options.

130. Due to lack of terms and communications, it is assumed that CHASE intends to entice its beneficiaries into slavery for financial gain.

## XII. COUNT EIGHT – VIOLATION OF 18 U.S. CODE § 8:

131. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

132. CHASE's actions, including the mismanagement of financial transactions involving Brandon C. Helman's funds, violated 18 U.S. Code § 8 by improperly handling obligations of the United States that were entrusted to Defendant's management.

133. The private right of action for this charge is sustained by the Plaintiff. Adequate consideration was given to the Defendant in the form of an affidavit with novation included in the Certified Mailing of parcel#2 mentioned above.

134. This criminal charge is hereby levied on this basis, against JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and, all associated doing business as (DBAs) entities/subsidiaries for this conspiracy to commit fraud, and, for failure to follow the laws that govern financial institutions.

### XIII. COUNT NINE – VIOLATION OF 18 U.S. CODE § 1341:

135. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

136. CHASE's actions, including the mismanagement of financial transactions involving Brandon C. Helman's funds, engaged in a scheme to defraud Plaintiff by misrepresenting the terms of financial agreements and committing actions in bad faith designed to deceive and defraud Plaintiff.

137. The private right of action for this charge is sustained by the Plaintiff. Adequate consideration was given to the Defendant in the form of an affidavit with novation included in the Certified Mailing of parcel#2 mentioned above.

138. This criminal charge is hereby levied on this basis, against JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and, all associated doing business as (DBAs) entities/subsidiaries for this conspiracy to commit fraud, and, for failure to follow the laws that govern financial institutions.

### XIV. COUNT TEN – VIOLATION OF 12 U.S. CODE § 1431:

139. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

140. CHASE, as a financial institution, failed to exercise its statutory duties and responsibilities under 12 U.S. Code § 1431, including ensuring that its dealings with Plaintiff were conducted in good faith and in accordance with banking regulations.

141. As a result of this violation, unapplied payments negatively impacted the Plaintiff's consumer credit score and affected their ability to access credit.

### XV. DEMANDS FOR RELIEF

142. Full discharge of the account in the current state.

143. Full refund of each individual extraneous payment made on the accounts using Federal Reserve Notes.

144. $1,000,000 (one-million dollars) in damages. Payable in Federal Reserve Notes.

145. Optional: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION will issue BRANDON CHARLES HELMAN a CHASE Credit Card that has no credit limit and is automatically set-off each month. This would require a Limited Power of Attorney where Brandon C. Helman would allow CHASE to do special indorsements on the behalf of Brandon C. Helman and BRANDON CHARLES HELMAN. This would include CHASE being allowed to keep any interest generated on any promissory note or bill of exchange. This would also include the possibility of allowing these securities to mature in an effort to bring larger interest gains to CHASE (Brandon C. Helman wants to ensure that CHASE is being paid well for this work in order to establish equal consideration). This optional choice would eliminate the needed relief of paragraph 144.

### SUMMARY

NOW, THEREFORE, in accordance with the pertinent legal provisions and in the interest of justice, the Plaintiff respectfully requests this Honorable Court to issue an Order for the award of monetary damages against the Defendant, CHASE. The Plaintiff further seeks any additional and appropriate relief that this Court, in its wisdom, may consider just and equitable given the

circumstances at hand.

THE PLAINTIFF ENTERS THIS COURT PROCEEDING WITH A CONSTRUCTIVE INTENT, VESTED IN THE DESIRE TO COLLABORATE WITH THE DEFENDANT TOWARDS A FAIR AND EQUITABLE CONCLUSION.

Dated: April 25th, 2025                    RESPECTFULLY SUBMITTED,

BRANDON CHARLES HELMAN

BY: /s/ *Brandon C. Helman*
Brandon C. Helman, PRO SE
P.O. Box 22
Upper Sandusky, Ohio, 43351
bhrealnm@gmail.com
(419)-577-7148

## CERTIFICATE OF SERVICE

I hereby certify that on April 25th, 2025, a copy of the foregoing was filed with the Clerk of this Court as is required by Pro Se litigants in person. Further, all counsel of record were served with the same.

/s/ *Brandon C. Helman*